UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-22659-CV-BLOOM
MAGISTRATE JUDGE REID

DANIEL KESNECK,

    Plaintiff,

v.

MIAMI-DADE DEPARTMENT
OF CORRECTIONS AND
REHABILITATION, et al.,

    Defendants
_____/

## **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

### I. Introduction

This matter is before the Court on Plaintiff's *pro se* Amended Complaint brought pursuant to 42 U.S.C. § 1983. [ECF 15]. This cause has been referred to the Undersigned for ruling on all pre-trial, non-dispositive matters and for Report and Recommendation on any dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Admin. Order 2019-2. [ECF 2].

Plaintiff, **Daniel Kesneck**, is a prisoner currently incarcerated at Taylor Correctional Institution. Because Plaintiff is a prisoner and proceeding *in forma pauperis* [*See* ECF 8], his Amended Complaint must be screened pursuant to 28

U.S.C. §§ 1915(e)(2)(b) and 1915A. *See Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007), *cert. denied*, 552 U.S. 994 (2007).

In the Amended Complaint, Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights arising from a slip and fall accident Plaintiff experienced while incarcerated at Metro West Detention Center ("MWDC"). In short, Plaintiff alleges that the Defendants were negligent before his accident, and after his accident denied him proper medical care and were deliberately indifferent to his serious medical needs to the extent that their actions constituted a cruel and unusual punishment.

Upon thorough review, as further discussed below, the Undersigned **RECOMMENDS** that Plaintiff's Amended Complaint [ECF 15] should be **DISMISSED**, without prejudice.

## II.   Plaintiff's Allegations

Plaintiff directs his Amended Complaint to a plethora of Defendants, nearly all of them unidentified "Doe" Defendants, and all sued in both their official and individual capacities, listed below:

1. Miami-Dade Department of Corrections and Rehabilitation ("MDCRD");

2. Corrections Health Systems ("CHS");

3. John/Jane Doe 1 (Charge Nurse of MWDC North Clinic on July 7, 2017 at 9:30 PM);

4. John/Jane Doe 2 (Nurse at MWDC North Clinic on July 7, 2017 at 9:30 PM);

5. John/Jane Doe 3 (Physician Assistant at MWDC North Clinic on July 7, 2017 at 9:30 PM);

6. John/Jane Doe 4 (Physician Assistant North at MWDC North Clinic on July 8, 2017 from 8:00 AM to 11:00 AM);

7. John/Jane Doe 5 (Charge Nurse of MWDC North Clinic on July 8, 2017 from 8:00 AM to 11:00 AM);

8. John/Jane Doe 6 (Triage Nurse at MWDC North Clinic on July 8, 2017 from 8:00 AM to 11:00 AM);

9. John/Jane Doe 7 (Physician at North and South Clinic on duty between July 7, 2017 and March 1, 2019);

10. John/Jane Doe 8 (Physician at North and South Clinic on duty between July 7, 2017 and March 1, 2019);

11. John/Jane Doe 9 (Physician at North and South Clinic on duty between July 7, 2017 and March 1, 2019);

12. John/Jane Doe 10 (Physician at North and South Clinic on duty between July 7, 2017 and March 1, 2019);

13. John/Jane Doe 11 (Physician at North and South Clinic on duty between July 7, 2017 and March 1, 2019);

14. John/Jane Doe 12 (Chief Medical Officer of MWDC from July 7, 2017 to March 2019);

15. John/Jane Doe 13 (Director of CHS of MWDC Medical Department from July 7, 2017 to March 1, 2019);

16. John/Jane Doe 14 (Director of Maintenance of MWDC from June 28, 2017 to July 11, 2017); and

17. John/Jane Doe 15 (Director of Sanitation of MWDC from April 1, 2017 to July 8, 2017).

[ECF 15-1 pp. 2-3]. For all Doe Defendants, Plaintiff asks that the Court "temporarily use" the address of MWDC as their addresses. [*Id*. at p. 4].

In the Amended Complaint, Plaintiff alleges that when he was arrested he was a "perfectly healthy" 59-year-old man. [*Id*. at p. 6]. After Plaintiff was arrested, he was held in MWDC, where he worked as a trustee, and "exhibited no physical limitations." [*Id*.]. Part of Plaintiff's job was to clean up certain overflowing toilets in MWDC. [*Id*.].

Plaintiff alleges that on about June 30, 2017, a toilet broke at MWDC in unit 2A2, causing water to run from the toilet until July 9, 2017, when the toilet was repaired. [*Id*.]. Plaintiff was tasked with cleaning up the water. [*Id*.]. Plaintiff alleges that he attempted to obtain non-slip work shoes from MWDC sanitation department, but never received them. [*Id*.].

As a result, on July 7, 2017, Plaintiff cleaned up the water while wearing "flip flop" sandals provided by MWDC. [*Id*. at p. 7]. While cleaning, Plaintiff slipped on the wet floor. [*Id*.]. Plaintiff alleges that his legs split out sideways, and he fell on

his right hip. [*Id*.]. Two officers who were on duty at the time, and who are not listed as Defendants in this case, witnessed the incident. [*Id*.]. Plaintiff alleges that after the fall, his right hip was in "severe pain" and he had a large bruise. [*Id*.].

Plaintiff claims that he was then made to walk to a gurney while in severe pain, before being brought to North Clinic. [*Id*.]. Plaintiff claims that upon seeing medical personnel at North Clinic, he was given two Tylenol pills, and ordered back to his housing unit. [*Id*.]. Plaintiff claims that the clinic visit was fifteen minutes, and he was forced to walk back unassisted to his housing unit, though "it was obvious to anyone that he was in severe pain." [*Id*.]. Plaintiff claims that "[a]t no time, the day of the incident, did medical personel (sic) at MWDC do an examination of the Plaintiff." [*Id*. at p. 8].

Plaintiff alleges that he waited two days for MWDC to provide him crutches, and his request for a wheelchair was denied. [*Id*.]. Plaintiff further alleges that it took MWDC Medical Department thirty days to perform an x-ray, "despite the fact that an xray (sic) machine, and a full time xray (sic) tech, are permanently housed in the MWDC South Clinic." [*Id*.]. Plaintiff also alleges that it took two and a half months to send Plaintiff outside MWDC for an MRI on his right hip, and four more months from the date of the MRI for them to have "a medical professional experienced in reading and interpreting the results" review his MRI. [*Id*. at pp. 8-9].

Plaintiff alleges that the MRI revealed that Plaintiff has a superior labrum tear in his right hip. [*Id.* at p. 9]. Plaintiff states that he was then examined by an orthopedic specialist at Miami Sports Clinic, who informed him that the only solution was a hip replacement. [*Id.*]. To date, Plaintiff alleges that he continues to experience "moderate right hip pain, and occasional severe pain, along with the right hip giving away on occasion," and that he requires a walker for mobility. [*Id.*].

In terms of relief, Plaintiff seeks hip replacement surgery, plus therapy and rehabilitation, to be paid for by the Defendants. [*Id.* at p. 11]. Plaintiff also seeks nominal and punitive damages of $250,000 "to compensate Plaintiff for the serious injury, pain and suffering, and for the negative change in Plaintiff's quality of life." [*Id.*].

### III. Discussion

A. Standard of Review

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Under both 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A, a complaint must be dismissed if the court determines that the complaint fails to state a claim upon which relief can be granted. *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). When

reviewing the complaint, the court takes the allegations made as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and § 1915(e)(2)(B)(ii). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, the Court may dismiss a complaint that fails "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (*per curiam*)).

Although a *pro se* pleading is liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*), it still must "suggest that there is some factual support for a claim." *Wright*, 740 F. App'x at 694. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, at 550 U.S. at 555.).

Finally, under section 1915(e)(2)(B)(ii), courts must dismiss as frivolous claims that are "based on indisputably meritless legal theory" or "whose factual

contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

B.  Plaintiff's Claims Against MDCRD

Plaintiff names MDCRD as a Defendant because it "supervises and operates" MWDC, however, Plaintiff is in effect simply suing the municipality of Miami-Dade County itself because MDCRD is a departmental agency of Miami-Dade County and because MWDC is a part of MDCRD that is also operated by Miami-Dade County.

To the extent that Plaintiff seeks to bring a claim against MDCRD based upon any of the Doe Defendants' actions, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Municipalities can be sued under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690.

To impose § 1983 liability on MDCRD, Plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In addition, a plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged

to have caused the particular constitutional violation in issue." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Here, Plaintiff's case clearly relies mainly upon *respondeat superior* to impose liability on MDCRD. For example, Plaintiff states MDCRD is responsible because it "failed to properly supervise its maintenance and sanitation departments, and fostered an attitude and custom of law work environment within the MWDC." [ECF 15 p. 13]. Accordingly, Plaintiff's claims against the MDCRD should be dismissed. *See Monell*, 436 U.S. at 691.

To the extent that Plaintiff's Amended Complaint might be liberally construed to allege that the MDCRD might be liable because his rights were violated by a custom or policy instituted, this would also fail for two main reasons.

First, Plaintiff does not allege a custom or policy that constituted deliberate indifference to his constitutional rights. *See Canton*, 489 U.S. at 388. While, Plaintiff does state in a conclusory manner that there was a "custom of lax work environment," this custom, does not constitute a violation of Plaintiff's constitutional rights. Plaintiff's allegations of "lax" customs go to his negligence claim, the slip and fall, not the subsequent medical claims, and MDCRD cannot be held liable even if they did because they did not cause the alleged constitutional violation. *See Canton*, 489 U.S. at 388.

Second, Plaintiff does not identify any "officials who speak with final policymaking authority" for MDCRD "concerning the acts alleged to have caused" Plaintiff's constitutional injuries. *See Grech*, 335 F.3d at 1329. Accordingly, Plaintiff's claims against MDCRD should be dismissed under whichever theory the Court analyzes his claims.

C.  Plaintiff's Allegations Against CHS

Next, Plaintiff directs the Amended Complaint against Corrections Health System, a division of the Jackson Health System because CHS "failed in their responsibility to provide qualified staff to treat the Plaintiff, failed to properly train staff to recognize a potentially serious medical issue, failed to protect the safety of the seriously injured Plaintiff, failed to diagnose and treat the Plaintiff's serious injury, failed to order its physicians to examine the injuries of the Plaintiff physically, failed to timely provide diagnostic testing to determine the extent of the Plaintiff's injuries, and failed to order its physicians to provide a definitive diagnosis." [ECF 15-1 at p. 13].

Just as with MDCRD, Plaintiff is in effect simply suing the municipality of Miami-Dade County itself because CHS is run by Jackson Health System, which is a part of the Public Health Trust of Miami-Dade County, which was created and established "by authority of Chapter 73-102, Laws of Florida 1973, as an agency and instrumentality of Miami-Dade County." Miami-Dade County Code § 25A-1.

As stated before to the extent Plaintiff seeks to impose liability on CHS for the Doe Defendants' actions, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Municipalities can be sued under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690.

Here, Plaintiff's case clearly relies mainly upon *respondeat superior* to impose liability on CHS because all of CHS's failures relate to CHS' supervisory responsibilities of the Doe Defendants. [*See* ECF 15-1 p. 13]. Accordingly, Plaintiff's claims against CHS should be dismissed. *See Monell*, 436 U.S. at 691.

To the extent that Plaintiff's Amended Complaint might be liberally construed to allege that the CHS might be liable because his rights were violated by a custom or policy instituted, this would also fail for the same reasons it fails against MDCRD.

First, Plaintiff does not allege a custom or policy that constituted a deliberate indifference to his constitutional rights. *See Canton*, 489 U.S. at 388. Here, Plaintiff's allegations are even more barebones than those against MDCRD; there are no allegations or facts at all about any custom or policy.

Second, just as with MDCRD, Plaintiff does not identify any "officials who speak with final policymaking authority" for CHS "concerning the acts alleged to have caused" Plaintiff's constitutional injuries. *See Grech*, 335 F.3d at 1329.

11

Accordingly, Plaintiff's claims against CHS should be dismissed under whichever theory the Court analyzes his claims.

D.   The John and Jane Doe Defendants

At this point in the analysis, the remaining fifteen Defendants in Plaintiff's Amended Complaint are all "John and Jane Does." "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). There is a limited exception to this rule "when the plaintiff's description is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). Further, Fed. R. Civ. P. 10(a) requires a complaint to "name all the parties." Fed. R. Civ. P. 10(a).

Here, Plaintiff's Doe Defendants are not quite *fictitious* parties. Rather, they are plausibly real people who Plaintiff simply cannot identify at this time. Plaintiff does provide descriptions that could, theoretically, identify some of the Doe Defendants, however, the Undersigned is unable to do so on its own and may not act as an investigator for Plaintiff. *See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Further, while Plaintiff provides the "temporary" contact information for them as MWDC, this is not useful because most of the Doe Defendants worked at MWDC over two and a half years ago, and there is no

indication of whether same employees are still there, or where they might be now, or who they are.

Where a Plaintiff has not described the John Doe with sufficient particularly to allow the Complaint to be served upon the John Doe, the district court may properly dismiss the claim against the John Doe. *See Richardson*, 598 F.3d at 738 (finding that where a plaintiff identified a defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institution," the court properly dismissed him because the description was insufficient to identify defendant among the many guards employed there); *see also Kabbaj v. John Does 1-10*, 600 F. App'x 638, 641 (11th Cir. 2015) (district properly dismissed plaintiff's claims against John Does where plaintiff provided no identifiable information as to John Doe defendants).

However, the initial use of an unnamed defendant is allowed "[w]here discovery would likely uncover that defendant's identity." *Morris v. Hays SP Warden*, 638 F. App'x 880, 881-82 (11th Cir. 2016) (holding district court incorrectly dismissed a plaintiff's complaint as frivolous where missing information as to defendant could be ascertained through discovery and plaintiff provided explanation for not being able to name to officer; defendant was not wearing a name tag and prison officials would not provide plaintiff with information to identify him). Here, discovery is not possible because there is no one to seek discovery from.

The Amended Complaint does not provide any information that would allow for the Marshals to serve any of the Doe Defendants in this case, and there is no one else remaining in this case who discovery in aid of revealing the Doe Defendants' identities can be sought. "A fictitious name …, when the real defendant cannot be readily identified for service, is insufficient to sustain a cause of action." *Williams v. DeKalb Cnty. Jail*, 638 F. App'x 976, 976-77 (11th Cir. 2016). Thus, Plaintiff's Amended Complaint should be dismissed without prejudice so that Plaintiff may more sufficiently identify some or all of the Doe Defendants so that service can be executed, and this case might proceed. *See, e.g., Jackson v. Capraun*, 534 F. App'x 854, 858 (11th Cir. 2013) (affirming a *sua sponte* dismissal without prejudice for claims made against John Doe).

## IV.   Recommendations

Based on the above, it is **RECOMMENDED** that Plaintiff's Amended Complaint [ECF 15] be **DISMISSED** without prejudice.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to do so will bar a *de novo* determination by the District Judge of anything in the Report and Recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn,* 474 U.S. 140, 149 (1985).

**SIGNED** this 10th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc: **Daniel Kesneck**
G90263
Taylor Correctional Institution
Inmate Mail/Parcels
8501 Hampton Springs Road
Perry, FL 32348
*PRO SE*